WRINKLES, Matthew Eric, Petitioner,

v.

STATE of Indiana, Respondent.

No. 82S00–0207–SD–407.

Supreme Court of Indiana.

Oct. 15, 2002.

### ORDER DENYING AUTHORIZATION TO FILE A SUCCESSIVE PETITION FOR POST–CONVICTION RELIEF

Petitioner, Matthew Wrinkles, by counsel, seeks permission to litigate additional post-conviction claims in state court relating to his death sentence pursuant to Indiana Post–Conviction Rule 1, Section 12. He filed a "Tender of Successive Petition for Post–Conviction Relief (Capital Case)" and tendered a successive "Petition for Post–Conviction Relief." Respondent, the State of Indiana, by counsel, filed an "Opposition to Tender of Successive Petition for Post–Conviction Relief." Petition-

er then filed "Wrinkles' Response to State's Opposition to Tender of Successive Petition for Post–Conviction Relief."

This order addresses the petition for successive post-conviction relief. The Court has jurisdiction over this matter because it concerns a death sentence. *See* Ind. Appellate Rule 4(A)(1)(a).

**Background.** Petitioner was charged, pursuant to Indiana Code Section 35–42–1–1, with having "knowingly" murdered three people (his wife, her brother and the brother's wife) in 1994. The jury unanimously convicted petitioner of the three murders in the guilt phase of the trial.

The State sought the death penalty, alleging as the aggravating circumstance that petitioner had committed multiple murders. *See* I.C. § 35–50–2–9(b)(8) (Supp.1994) ("The defendant has committed another murder, at any time, regardless of whether the defendant has been convicted of that other murder."). The jury unanimously recommended the death sentence in the penalty phase. The Vanderburgh Circuit Court followed the jury's unanimous recommendation, and sentenced petitioner to death in the sentencing phase. *See* I.C. § 35–50–2–9(e)(2) (Supp.1994).

The conviction and sentence were affirmed on direct appeal in *Wrinkles v. State,* 690 N.E.2d 1156 (Ind.1997), *cert. denied,* 525 U.S. 861, 119 S.Ct. 148, 142 L.Ed.2d 121 (1998). A collateral challenge to the conviction and sentence under Indiana's rules for post-conviction relief was denied by the post-conviction court and affirmed on appeal in *Wrinkles v. State,* 749 N.E.2d 1179 (Ind.2001), *cert. denied* — U.S. ——, 122 S.Ct. 1610, 152 L.Ed.2d 624 (2002). After exhausting the review to which he was entitled as a matter of right in state court, petitioner initiated proceedings in a federal district court seeking a writ of habeas corpus. See

*Wrinkles v. Anderson,* case no. IP 01–1668–C–T/K (S.D.Ind.). The habeas action remains pending and the district court has stayed execution of the death sentence.

**Post–Conviction Rule 1, Section 12.** The Court's rules permit a person convicted of a crime in an Indiana state court to challenge the conviction and sentence collaterally in a post-conviction proceeding. *See* Ind. Post–Conviction Rule 1. As indicated above, petitioner has already availed himself of that procedure. Post–Conviction Rule 1, Section 12 specifies the procedure for requesting a second, or "successive" collateral review. The rule states:

> (b) The court will authorize the filing of the petition if the petitioner establishes a reasonable possibility that the petitioner is entitled to post-conviction relief. In making this determination, the court may consider applicable law, the petition, and materials from the petitioner's prior appellate and post-conviction proceedings including the record, briefs and court decisions, and any other material the court deems relevant.

The claims petitioner seeks to litigate in a successive post-conviction proceeding are addressed in turn below.

1. ***Ring v. Arizona,*** —— U.S. ——, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). *See* Petition for Post–Conviction Relief (hereafter "Petition"), ¶ 8(A), 9(A); Tender of Successive Petition (hereafter "Tender"), ¶ 4 p. 2–3.

In *Ring,* the United States Supreme Court overruled *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), to the extent it allowed the judge, not the jury, to find an aggravating circumstance that supported a death sentence, and decided that *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), applies to Arizona's death penalty scheme. · *Apprendi* announced the rule that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348. *Ring* was decided after petitioner's sentence was final.

■ Petitioner contends that *Ring* invalidates Indiana's death penalty scheme in general and his death sentence in particular. Specifically, petitioner contends that the sentence is invalid because there was "no specific jury verdict" finding that the aggravating circumstance had been proven beyond a reasonable doubt or that the aggravating circumstance outweighed mitigating circumstances, that the three murder convictions did not compel the jury to have found that the aggravating circumstance outweighed the mitigating circumstances, and that the jury was incorrectly instructed that its role was only advisory. Petitioner further asserts that even though *Ring* was decided well after his death sentence was imposed, it should be applied retroactively.

The Court need not decide whether *Ring* applies retroactively or whether some aspects of Indiana's death penalty scheme are affected by *Ring,* because *Ring* is not implicated in petitioner's case under any view that the Court might find plausible. The aggravating circumstance that made petitioner eligible for a death sentence was that he had committed multiple murders. *See* I.C. § 35–50–2–9(b)(8). The jury's verdict in the guilt phase, finding petitioner guilty of the three murders, necessarily means that the jury found, beyond a reasonable doubt, that petitioner had committed more than one murder. In addition, the jury was instructed that before it could recommend that a death sentence be imposed, the jury must find the existence of the charged aggravating cir-

cumstance beyond a reasonable doubt and that the aggravating circumstance outweighed the mitigating circumstances. Therefore, the jury necessarily determined the fact of the multiple-murder aggravating circumstance beyond a reasonable doubt. *Accord Obadyah Ben Yisrayl v. State,* no. 45S00–0112–SD–636, unpublished "Order Concerning Successive Post–Conviction Relief" (Ind. Feb. 15, 2002) (rejecting argument that *Apprendi* rendered death sentence invalid and denying leave to file successive post-conviction petition in case where the multiple-murder aggravating circumstance had been charged, defendant had been convicted of multiple murders and was sentenced to death over the jury's recommendation against a death sentence).

█ Moreover, in his direct appeal, petitioner made some of the same arguments relating to Indiana's death penalty scheme and its operation that petitioner now makes in the successive post-conviction petition. *See Wrinkles,* 690 N.E.2d at 1164–69. The difference is that petitioner now cites *Ring.* To the extent the claims now presented are the same claims made and rejected in the prior proceedings, the claims are *res judicata. See, e.g., Daniels v. State,* 741 N.E.2d 1177, 1184 (Ind.2001).

Petitioner has not established a reasonable possibility that he is entitled to post-conviction relief on this claim.

█ **2. Prosecutor's remarks.** Petition, ¶ 8(B), 9(B); Tender, ¶ 5 p. 3–5. The prosecutor made comments during closing argument which arguably referred to a death-eligible aggravating circumstance that had not been charged in petitioner's case. The remarks are quoted in the Petition, ¶ 9(A)(5).

No objection was made to the remarks at trial. No claim of "fundamental error" based on the remarks was presented in the direct appeal. No claim that petitioner was deprived of the right to effective assistance of counsel in relation to the remarks was made in the prior post-conviction proceeding. Therefore, petitioner has waived any error based on the prosecutor's remarks that was available to petitioner in the prior proceedings. *See, e.g., Sanders v. State,* 765 N.E.2d 591, 592 (Ind.2002); *Wrinkles,* 749 N.E.2d at 1187, n. 3; *Daniels,* 741 N.E.2d at 1184–88; *Canaan v. State,* 683 N.E.2d 227, 235 n. 6 (Ind.1997).

█ Furthermore, to the extent petitioner now contends that post-conviction counsel were ineffective in not asserting the prosecutor's remarks as a basis for post-conviction relief, the claim presents no cognizable grounds for relief. *See Daniels,* 741 N.E.2d at 1190; *Baum v. State,* 533 N.E.2d 1200, 1201 (Ind.1989) ("We adopt the standard that if [post-conviction] counsel in fact appeared and represented the petitioner in a procedurally fair setting which resulted in a judgment of the court, it is not necessary to judge his performance by the rigorous standard set forth in *Strickland v. Washington* [466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674].").

▪█ Petitioner argues he is excused from not objecting at trial and not raising the argument in prior proceedings because there has been a change in the law that applies retroactively to his case. He cites *Nicholson v. State,* 768 N.E.2d 443, 446 (Ind.2002), and contends the case "implicitly but directly overruled long-standing precedent" by holding that a sentencer may not consider an aggravating circumstance that is not charged. Tender, ¶ 5.

Whether *Nicholson* changed the law need not be addressed because what happened in *Nicholson* did not happen in petitioner's case. In *Nicholson,* the defendant was charged with two aggravating circumstances in Indiana Code section 35–50–2–

9(b). Following the jury's recommendation (in *Nicholson,* the recommendation was life without parole, not a death sentence), the trial court's sentencing statement referred to the two charged aggravating circumstances plus an additional one that had not been charged. On direct appeal, this Court reversed the sentence after deciding that neither of the two charged aggravating circumstances was supported by sufficient evidence. With respect to the aggravating circumstance that the trial court found *sua sponte,* this Court wrote that "it was error for the trial court to list this as an aggravator because the State did not allege it." 768 N.E.2d at 447.

In petitioner's case, on the other hand, the trial court's sentencing statement does not refer to an uncharged aggravating circumstance. Direct Appeal Record at 409. In addition, the jury was instructed that the charged aggravating circumstance was the only aggravating circumstance the jury was allowed to consider. Direct Appeal Record at 192. In short, there is no indication that an uncharged aggravating circumstance played any role in the jury's recommendation for, or the trial court's imposition of, a death sentence.

Petitioner has not established a reasonable possibility that he is entitled to post-conviction relief on this claim.

■ **3. The jury venire.** Petition, ¶ 8(C), 9(C); Tender, ¶ 5 p. 5. Petitioner states that the jury venire consisted of at least ninety-four people, only one of whom was African American. Petitioner asserts that "the relevant census data" shows Vanderburgh County has an African American population higher than 8.5%. Petitioner contends he was denied a jury drawn from a "fair cross-section" of the community because minority under-representation "of this magnitude" could not have occurred by random, and therefore, African–Ameri-

cans must have been systematically excluded from the venire.

■ The makeup of the jury venire was not objected to at trial and was not raised as the basis of any argument in the direct appeal or the first post-conviction proceeding. Thus, to the extent petitioner's argument was available to him in the prior proceedings, it is waived. *See, e.g., Sanders,* 765 N.E.2d at 592; *Wrinkles,* 749 N.E.2d at 1187, n. 3; *Daniels,* 741 N.E.2d at 1184–88; *Canaan,* 683 N.E.2d at 235 n. 6.

■ Even where error has been preserved at trial and the issue raised on direct appeal, some showing is required that an under-representation "is due to systematic exclusion of the group in the jury-selection process." *Dye v. State,* 717 N.E.2d 5, 19 (Ind.1999) (rejecting defendant's argument that the trial court erred in not postponing trial while defendant investigated a racial disparity or in not supplementing the venire pursuant to a procedure set out in state statutes).

Petitioner acknowledges that error was not preserved, but directs the Court's attention to *Zolo Azania v. State,* case no. 02S00–0009–SD–538, another successive post-conviction capital case. In *Azania,* the Court allowed the filing of a successive petition on a claim that an error in a computer program systematically eliminated more than a quarter of the jury pool and up to 70% of the eligible African American jurors. *See Azania v. State,* 738 N.E.2d 248 (Ind.2000) (published order). However, unlike the petitioner in that case, petitioner here fails to make any showing of a systematic exclusion from the jury pool. Petitioner has not established a reasonable possibility that he is entitled to post-conviction relief on this claim.

For the reasons set forth above, petitioner has not established a reasonable

possibility that he is entitled to post-conviction conviction relief on any of the claims presented. Accordingly, the request for leave to file a successive post-conviction relief petition is DENIED.

SHEPARD, C.J., DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.